UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| CONRAI ANDRE KABALLAH, JR., | ) | |
| | ) | |
| Petitioner, | ) | No. 0:21-CV-82-GFVT-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| IVAN KROW, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

On November 17, 2021 (under the mailbox rule), state prisoner Conrai Andre Kaballah, Jr., filed a timely pro se petition for a writ of habeas corpus.  D.E. 1.  The Warden responded and attached portions of the record.  D.E. 17.  The Warden also conventionally filed CDs containing the written and video record.  D.E. 14.  Kaballah's reply was docketed on July 22, 2022.  D.E. 23. For the reasons described herein, the undersigned recommends that the petition be **DENIED**.

## I. Background

The Kentucky Supreme Court described the background of this case as follows:

> Taylor and Kabballah were housed in the same dormitory as Cedric Weaver at the Louisville Metro Detention Center. On November 13, 2014, Weaver asked Taylor and another inmate if they could move their chess game, so he could watch the television. When they refused, Weaver picked up all their chess pieces. That night, a group of inmates in Weaver's dorm room dragged him out [of] his bed and violently assaulted him for an extended period of time. At some point, Taylor anally sodomized Weaver with the handle of a toilet brush found in the dorm room. The Special Operations and Response Team ("SORT") eventually broke up the situation by shooting percussion rounds into the dorm and physically restraining those involved.

> Louisville Metro Department of Corrections Sergeant Melinda Zapata was the first to see Weaver after he was assaulted. She testified that he was sitting on his bunk, bleeding from his head which was "as big as a basketball," and that "his ear was hanging off his head." Weaver suffered a traumatic brain injury. He had to

undergo months of physical therapy, speech therapy, and occupational therapy. It took seven months of physical therapy before Weaver learned to walk again.

Ten defendants were indicted for the incident; nine defendants remained the week before trial. Just prior to trial, seven of these defendants pled guilty to various charges arising out of the assault. This left Taylor and Kaballah as the only remaining defendants at trial. Both men were convicted of multiple counts and sentenced to an enhanced term of life in prison.

*Taylor v. Commonwealth*, 611 S.W.3d 730, 734 (Ky. 2020), *reh'g denied* (Dec. 17, 2020) (footnotes omitted).[1]

Kaballah appealed his convictions to the Kentucky Supreme Court. Among the issues he raised in that appeal are issues that appear in his federal habeas petition (*see Taylor*, 611 S.W.3d at 735-743). Kaballah raises the following nine grounds for relief in his petition:

(1)     "The trial court abused its discretion by not granting a continuance upon the release of the identity of the Commonwealth's key witness the week prior to trial." D.E. 1 at 5.

(2)     "The trial court abused its discretion when it deferred disclosure of the Commonwealth's key witness." *Id.* at 7.

(3)     "The Commonwealth committed a [*Brady*] violation by deferring disclosure of the key witness's identity and reduction in sentence during trial." *Id.* at 8.

(4)     "The trial court violated the Petitioner's 6th Amendment right to compulsory process by allowing attorneys for the seven other co-defendan[ts] to announce their clients' intention to involve their 5th Amendment right to avoid self-incrimination." *Id.* at 10.

(5)     "The trial court erred by allowing both defendants to be convicted of both First-Degree Assault and Criminal Attempt – Murder, both based on the same act." *Id.* at 12.

(6)     "The trial court erred by failing to conduct a [*Hall*] analysis of the photographs taken of the victim's injuries." *Id.*

(7)     "Reversible error occurred when both defendants were not [*Mirandized*] prior to being interrogated shortly after the assault occurred." *Id.*

---

[1] As the Warden points out, because his co-defendant Ricardo Taylor filed his notice of appeal before Kaballah, his name appears first on the appeal. D.E. 17 at 3 n.1.

(8)    "The trial court erred by allowing a transcript-commissioned by the Commonwealth-of a phone call Taylor made from jail to be shown during closing arguments." *Id.*

(9)    "Cumulative error demands reversal." *Id.* at 13.

The Court will separately consider each of these nine grounds for relief and will reference them as numbered in this list.

## II. Legal Standards

A state prisoner has a statutory right to collaterally attack his conviction or sentence. *West v. Bell*, 242 F.3d 338, 346 (6th Cir. 2001). A state prisoner may seek federal habeas corpus relief based on being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act, Pub L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

AEDPA establishes a "highly deferential" standard of review that is "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). All the state court's factual findings are presumed

to be correct; they can be rebutted only by "clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cri. 2003), *cert. denied*, 543 U.S. 1080 (2005); 28 U.S.C. § 2254(e)(1). Legal conclusions made by state courts also receive substantial deference under AEDPA. "[A] federal habeas corpus court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (internal quotation marks omitted). Also, "circuit precedent does not constitute clearly established Federal law" under AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (internal quotation marks omitted). In sum, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

Therefore, the question before this Court is not merely whether the Kentucky courts were incorrect, but whether they were so wrong that their treatment of the law and facts was "unreasonable" under these deferential standards.

### III. Analysis

### A.    Ground One – Motion for Continuance

Kaballah claims that the Kentucky Supreme Court acted contrary to and unreasonably applied federal law when it held that the trial court did not abuse its discretion in denying his motion to continue the trial. D.E. 1 at 5. The Kentucky Supreme Court described the factual background of grounds one and two:

> The first two issues below are based on the Commonwealth's use of Luke Payne as a key witness in the trial of Taylor and Kaballah. On October 31, 2016, the trial court deferred disclosure of Payne's identity until forty-eight hours prior to his testimony to protect his safety while incarcerated. On December 4, 2017, the trial court set the trial date to June 26, 2018. Prior to trial, Payne received eight years to serve after pleading guilty to second-degree robbery. A persistent felony

offender charge was dismissed. The Commonwealth, per the trial court's orders, disclosed Payne's identity to the defense on June 22, 2018, three days before the start of the trial. During the final pre-trial conference on June 25, 2018, the Commonwealth informed the trial court that it had revealed Payne's identity to Taylor and Kaballah. Moody, then a co-defendant, played a video recording of Payne's guilty plea that he obtained from the clerk's office. Moody moved to dismiss the indictment after alleging that the Commonwealth did not disclose that Payne received a favorable plea arrangement in exchange for testifying at the trial. Taylor and Kaballah joined the motion. The next day the motion was renewed and subsequently denied by the trial court. Moody then moved for a continuance to investigate Payne and the alleged deal made with the Commonwealth, which Taylor and Kaballah joined. The trial court denied the motion for a continuance.

*Taylor*, 611 S.W.3d at 734-35.

In his reply, Kaballah argues that the trial court's denial of the motion "effectively deprived [his] trial counsel of the ability to adequately present a defense for his client on such short notice of the Commonwealth's chief witness." D.E. 23 at 3. Kaballah primarily relies on *Ungar v. Sarafile*, 376 U.S. 575 (1964). There, the Supreme Court of the United States held that "[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar*, 376 U.S. at 575. Further, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Id.* Rather, this question turns on "the circumstances present in every case, particularly in the reasons presented to the trial judge *at the time the request is denied*." *Id.* (emphasis added) (citations omitted). The Sixth Circuit adopted this precedent and held that "the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether the delay is purposeful or is caused by the accused, the availability of other competent counsel, the complexity of the case, and whether denying the continuance will lead to identifiable prejudice" are the factors to be considered. *Wilson v. Mintzes*, 761 F.2d 275, 281 (6th Cir. 1985) (citations omitted). The Kentucky Supreme Court has also adopted these factors. *See Snodgrass v.*

*Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991). "If the motion for a continuance is denied, to establish a constitutional violation a criminal defendant must show demonstrable prejudice to his defense, such as 'by pointing to specific errors made by trial counsel.'" *White v. White*, Civil No. 5:02-492-KKC, 2021 WL 4236929, at *38 (E.D. Ky. Sept. 16, 2021) (citing *United States v. Chronic*, 466 U.S. 648, 659-66 (1984); *Avery v. Alabama*, 308 U.S. 444, 446-53 (1940)).

In Kaballah's direct appeal, the Kentucky Supreme Court applied the *Snodgrass* factors and found that:

> Taylor and Kaballah simply requested a 'reasonable amount of time' for the continuance rather than a concrete length of time. Thus, the length of the delay requested is not enough to support that the trial court abused its discretion. Additionally, while there had been no previous continuances in this case, the inconvenience to litigants, counsel, and the court was great. The trial court noted during trial that the logistics were 'a daunting task for everybody.' There were nine defendants remaining at the time of this motion, some of whom were incarcerated in a corrections facility while others were on home incarceration, and some were in Louisville Metro Corrections while others were in state facilities. The trial's size made transportation, logistics, and scheduling difficult. The trial court is entitled to consider the consequences of granting a continuance for such a logistically complex trial and could have reasonably found that the complexity of the case outweighed the need for additional investigation into Payne. A continuance would have exacerbated these inconveniences to the litigants, counsel, and the court.

*Taylor*, 611 S.W.3d at 735. Further, the Kentucky Supreme Court held that Kaballah "failed to show any identifiable prejudice" and noted that he was "still able to cross-examine [Payne] extensively and attack his credibility in front of the jury." *Id.* at 735-36. Kaballah's argument that the Kentucky Supreme Court affirmed the trial court's decision "solely because [his] attorney simply requested 'a reasonable amount of time' for the continuance" is contrary to the record. D.E. 23 at 2. The Kentucky Supreme Court held that the trial court did not abuse its discretion in denying the continuance based on the length of the delay, complexity of the case, and resulting inconvenience to the parties, litigants, and trial court. *Taylor*, 611 S.W.3d at 735-36. While Kaballah later emphasized on direct appeal "the amount of discovery material given to [him] three

days before trial began," he "did not mention this when [he] moved for a continuance." *Id.* Kaballah also cites to the volume and timing of the discovery in his reply. D.E. 23 at 4. However, he does not provide any United States Supreme Court precedent that this is sufficient to establish a constitutional violation. Indeed, the Supreme Court has held the opposite. *See Avery*, 308 U.S. at 446-53 (court's denial of motion to continue capital trial did not deprive the defendant of his right to effective assistance of counsel where defense counsel had only three days to prepare and where counsel "performed their full duty 'intelligently and well.'"). Despite the amount of discovery his counsel received days before trial, Kaballah fails to identify any actual prejudice. Rather, Kaballah's counsel was "still able to cross-examine [Payne] extensively and attack his credibility in front of the jury." *Taylor*, 611 S.W.3d at 736.

Kaballah fails to address how the Kentucky Supreme Court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington*, 562 U.S. at 103. He argues that he has "met the[] standards" for granting a continuance, but does not specifically discuss those standards. D.E. 23 at 3. He has not shown that the Kentucky Supreme Court's treatment of the facts and law as to this issue clearly contravened or unreasonably applied federal law. Rather, the Kentucky Supreme Court analyzed the appropriate factors and reasonably concluded that the motion for a continuance was properly denied. Thus, he cannot overcome deferential standards applicable to his petition and the first ground of his petition should be denied.

### B.    Ground Two– Deferred Disclosure of Witness

Next, Kaballah's second ground asserts that "[t]he trial court abused its discretion when it deferred disclosure of the Commonwealth's key witness." D.E. 1 at 7. No further argument or support is included in either the petition or Kaballah's reply. "[I]ssues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (alteration in original) (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).

Even if ground two is not deemed waived, it should still be denied because Kaballah has failed to show that the Kentucky Supreme Court's treatment of the facts and law as to this issue clearly contravened or unreasonably applied federal law. The Kentucky Supreme Court relied on its own precedent in determining that the trial court properly delayed disclosure of Payne's identity. *Taylor*, 611 S.W.3d at 737-38. It found that Payne's "identity simply was not disclosed until just prior to trial in order to protect his safety." *Id.* at 737. The court also noted that "[t]he necessity of this protection was only further proven during trial, as Taylor made several threatening phone calls during trial regarding Payne's testimony." *Id.* at 737 n.7. Further, the defense was given three days before trial to investigate and was able to "extensively cross-examine Payne at trial." *Id.* at 737.

"There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bussey*, 429 U.S. 545, 559 (1977). "Rather, all the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial." *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) *opinion corrected on denial of reh'g*, 307 F.3d 459 (6th Cir. 2002) (citing *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (alteration in original)

(quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  Kaballah has failed to cite any federal law that the Kentucky Supreme Court's holding contravened or unreasonably applied.  Nor has he explained how the trial court's ruling rises to the level of a due process violation.  Thus, even if ground two is not deemed waived, there is no cognizable constitutional issue and Kaballah is not entitled to habeas relief on this claim.

### C.    Ground Three – Payne's Sentence Reduction

Ground three asserts that the Kentucky Supreme Court erred when it held that no *Brady* violation occurred by the Commonwealth withholding witness Luke Payne's sentence reduction. Kaballah argues that the Commonwealth agreed to reduce Payne's sentence in exchange for his testimony at trial.  D.E. 23 at 5-7.  This same argument was made on direct appeal, and the Kentucky Supreme Court found that the record "did not contain any evidence of an agreement between Payne and the Commonwealth."  *Taylor*, 611 S.W.3d at 738 n.8.  Rather, "[t]he additional sentence reduction was authorized by a different court division in Jefferson County and was allowed due to alleged threats made towards Payne after he testified in this case."  *Id.*  Kaballah appears to argue that this finding was based on an unreasonable determination of facts under § 2254(d)(2) and cites to multiple cases to support his argument that Payne testified in exchange for the sentence reduction.  *See* D.E. 23 at 5-7.  However, contrary to his assertions, those cases are distinguishable from the instant case and involved actual, admitted agreements for sentence reductions between the government and witnesses.  *Giglio v. United States*, 405 U.S. 150, 152-153 (1972) (government attorney admitted to agreement in his affidavit); *Napue v. Illinois*, 360 U.S. 264, 265 (1959) (government attorney admitted to a promise of consideration in exchange for witness's testimony).  Kaballah concedes that the Commonwealth and Payne repeatedly denied the existence of any deal between them.  D.E. 23 at 6.  Here, Kaballah simply relies on the timing

of the sentence reduction in support of his assertion that an agreement existed between the Commonwealth and Payne. *Id.* This speculation alone does not amount to the clear and convincing evidence required to rebut the state court's factual findings. Thus, the Court must presume these findings to be correct. *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cri. 2003), *cert. denied*, 543 U.S. 1080 (2005); 28 U.S.C. § 2254(e)(1). Kaballah has failed to show the Kentucky Supreme Court's decision that Payne's sentence reduction was not in exchange for his testimony was an unreasonable determination of the facts presented to the trial court.

Next, Kaballah also argues that, even if there was not an actual deal between the government and Payne, *Brady* violations were committed. *Id.* at 7. Kaballah asserts that the threatening phone calls to Payne were never provided to the defense. *Id.* at 8. Kaballah also alleges that the Commonwealth "secretly sought a reduction" and "waited until after the evidence was closed to present it to the defense." *Id.* These are the same arguments he made on direct appeal. The Kentucky Supreme Court noted that "*Brady* only applies to 'the discovery, *after trial*, of information which had been known to the prosecution but *unknown to the defense*." *Taylor*, 611 S.W.3d at 738 (quoting *Bowling v. Commonwealth*, 80 S.W.3d 405, 410 (Ky. 2002)). The Kentucky Supreme Court also noted that "[t]he Commonwealth turned over evidence of Payne's sentence reduction—which had occurred only two days prior—*during trial*, and that "*Brady* turns on fair disclosure and does not create the right to discovery in a criminal trial." *Id.* Thus, the Kentucky Supreme Court held "[a]s no specific allegation of exculpatory evidence being withheld until after trial has been raised, no *Brady* violation has occurred." *Id.* (footnote omitted).

*Brady* places a constitutional duty on the prosecution to disclose evidence that is both material and favorable to the defense. *McNeill v. Bagley*, 10 F.4th 588, 598 (6th Cir. 2021), *cert. denied sub nom. McNeill v. Shoop*, 142 S. Ct. 1377 (2022). Favorable evidence includes all

evidence that creates a reasonable doubt, whether it is exculpatory or impeachment evidence. *Id.* Impeachment evidence is material under *Brady* because a jury's reliance on the credibility of a witness can be decisive in determining the guilt or innocence of the accused. *Hall v. Mays*, 7 F.4th 433, 446 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 2655 (2022). The Court should individually evaluate each piece of evidence for favorability. *McNeill*, 10 F.4th at 598. Under *Brady*, evidence is material if it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Id.* *Brady* is about the fairness of the trial. *United States v. Paulus,* 952 F.3d 717, 728 (6th Cir. 2020). Further, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to complete failure to disclose." *O'Hara v. Brigano*, 499 F.3d 492, 502 (6th Cir. 2007) (quoting *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994)). "Delay. . . violates *Brady* [only] when the delay itself causes prejudice." *Id.* (alterations in original) (quoting *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir. 1992)).

In the habeas context, the question before the Court is "whether any fairminded judge could agree with the state court's *Brady* assessment." *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1103 (6th Cir. 2022), *cert. denied sub nom. Chinn v. Shoop*, 143 S. Ct. 28 (2022). "[S]o long as the state courts reach a *decision* that reasonably applies Supreme Court precedent – however deficient some of the court's reasoning might be – we must deny the writ." *Davis v. Carpenter*, 798 F.3d 468, 475 (6th Cir. 2015). Taken out of context, the Supreme Court of Kentucky's statement that *Brady* only applies "after trial" appears to be an overstatement because *Brady* imposes obligations on prosecutors that exist prior to trial. Many cases define the contours of those obligations and set requirements for the timing of disclosure, generally in time for effective use at trial. In context, however, it is clear that the Supreme Court of Kentucky meant that *Brady* violations warrant remedial relief by focusing upon the fairness of the trial, which

analysis necessarily occurs in a post-trial context.  Here, the evidence of Payne's sentence reduction was provided during trial and was not withheld until "after trial."  Kaballah's burden under AEDPA is to show that this disclosure during trial, after Payne's testimony, constituted a *Brady* violation based upon an unreasonable application of clearly established precedent of the United States Supreme Court.  He has not provided any Supreme Court case supporting his claim of a *Brady* violation for evidence that was disclosed during trial, but following the testimony of a witness.

Kaballah has also failed to show that the nondisclosure of the alleged threatening phone calls from Taylor to Payne violated *Brady*.  Kaballah asserts that he "could have used the phone calls to support his theory that Taylor was the one who committed the acts in question."  *Id.* at 8. As to materiality, this could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *McNeill*, 10 F.4th at 598.  Nor does this amount to exculpatory or impeachment evidence.  While the calls may support Taylor's guilt, they certainly do not exculpate Kaballah or create a reasonable doubt as to his own guilt.  Thus, Kaballah has not shown that the phone calls were material or favorable to him, when it is his burden to do both.

As to the sentence reduction, the Commonwealth disclosed this reduction during trial, but after the close of proof, two days after it had been granted.  *Taylor v. Commonwealth*, 611 S.W.3d 730, 738 (Ky. 2020).   Thus, at best, this disclosure was slightly delayed.  Even so, the sentence reduction occurred *after* Payne testified and was based on threatening phone calls from Kaballah's co-defendant.  While Kaballah argues he "is allowed to cross-examine on the issue of bias," this reduction does not indicate any bias that Payne had against him.  D.E. 23 at 8.  Again, Payne's sentence reduction was based on threatening phone calls from Taylor.  Kaballah has not shown

how this exculpates him, how it could be used to impeach Payne, or how the slight delay in its disclosure prejudiced him.

Kaballah's petition also claims that the Commonwealth committed a *Brady* violation by deferring disclosure of Payne's identity. D.E. 1 at 8. However, no further support for this claim is included in either the petition or his reply.[2]  *See* D.E. 23 at 4-9. Generally, a habeas petition cannot be granted unless "it appears that the applicant has exhausted the remedies available in the courts of the State." *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (quoting 28 U.S.C. § 2254(b)(1)). "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Wilson v. Mitchell*, 498 F.3d 491, 498-99 (6th Cir. 2007) (citing *Lott v. Coyle*, 261 F.3d 594, 601 (6th Cir. 2001)) (internal quotation marks omitted). Thus, section 2254(b)(1) requires exhaustion of court-provided remedies. While Kaballah argued on direct appeal that the trial court permitting the deferred disclosure of Payne's identity led to the Commonwealth committing *Brady* violations, he did not argue that the deferred disclosure in and of itself was a *Brady* violation. *See* D.E. 17-4 at 16, 29-30. Thus, this portion of Kaballah's third ground for relief is barred by the exhaustion requirement of 28 U.S.C. § 2254(b)(1).

Even if this claim was not procedurally barred or deemed waived, it would still fail on the merits. As previously discussed, the trial court permitted the Commonwealth to defer disclosure of Payne's identity "until just prior to trial in order to protect his safety." *Taylor*, 611 S.W.3d at 737. Kaballah has failed to show the deferred disclosure prejudiced him. Rather, the defense was given three days before trial to investigate and was able to "extensively cross-examine Payne at trial." *Id.* at 737. Thus, regardless of any procedural default, this claim fails on the merits.

---

[2] Thus, even if this claim were exhausted, the undersigned would still recommend that it be denied as waived.

In sum, Kaballah has failed to show that the Kentucky Supreme Court's treatment of the facts and law as to this claim clearly contravened or unreasonably applied federal law. Accordingly, ground three should be denied.

### D.    Ground Four – Compulsory Process

Ground four asserts that the Kentucky Supreme Court acted contrary to and unreasonably applied federal law when it held that no Sixth Amendment violation occurred when the trial court allowed the attorneys of Kabballah's co-defendants to invoke their Fifth Amendment rights.    The Kentucky Supreme Court summarized the factual background of this issue:

> Prior to trial, defendants' attorneys informed the attorneys for the other seven co-defendants that they intended to call their clients as witnesses during trial. All seven attorneys responded that their clients were going to invoke their Fifth Amendment rights against self-incrimination.    Defendants' attorneys objected, arguing that each co-defendant needed to be questioned, outside the presence of the jury, in order to determine whether they were going to invoke the privilege, instead of allowing their attorneys to invoke the privilege for them.

*Taylor*, 611 S.W.3d at 738-39.  The Kentucky Supreme Court cited to prior cases in which it found no error in allowing an attorney to invoke a client's Fifth Amendment privilege and found the facts in Kaballah's case "paint[ed] an even clearer picture of the necessity to avoid calling the other seven witnesses."  *Id.* at 739.  The court concluded that "[n]o doubt exists that any testimony they gave would be substantive and potentially incriminate each defendant."  *Id.*  Thus, it held that "the trial court did not err in allowing their attorneys to invoke their Fifth Amendment privilege against self-incrimination without calling each co-defendant to the stand."  *Id.*

As an initial matter, Kaballah's reply includes a lengthy discussion of, and multiple citations to, Kentucky caselaw and rules of evidence.  D.E. 23 at 10-13.  However, to the extent Kaballah argues that the Supreme Court of Kentucky incorrectly applied its own precedent or rules of evidence, "such a claim is not cognizable on habeas, because it is not a constitutional violation."

14

*Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (citing 28 U.S.C. § 2254(a)), *opinion corrected on denial of reh'g*, 307 F.3d 459 (6th Cir. 2002).

The Sixth Amendment "guarantees [a defendant] 'compulsory process for obtaining witnesses in his favor.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (quoting U.S. Const. amend. VI). Kaballah asserts that "any and all" of his co-defendants "could have impeached Payne's account or even accused Payne of similar conduct." D.E. 23 at 13. Kaballah relies on *Washington v. Texas*, 388 U.S. 14 (1967), in which the Supreme Court of the United States held that the defendant:

> was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense.

*Washington*, 388 U.S. at 23. This holding was in reference to prior Texas statutes that prohibited charged coparticipants in the same crime from testifying for one another. *Id.* at 16-17. However, the Court also noted that its holding should not "be construed as disapproving testimonial privileges, ***such as the privilege against self-incrimination*** or the lawyer-client or husband-wife privileges, which are based on entirely different considerations from those underlying the common-law disqualifications for interest." *Id.* at 23 n.21 (emphasis added). *Washington* did not hold that a witness must take the stand to assert his Fifth Amendment privilege. It only held that the application of the aforementioned Texas statutes violated a defendant's Sixth Amendment right to compulsory process. *Id.* at 23. Thus, Kaballah's reliance on *Washington* is misguided.

Kaballah also argues that "[t]he person testifying must assert [the privilege] or waive it, not the attorney." D.E. 23 at 11. In support of this assertion, he cites to *Florida v. Nixon*, 543 U.S. 175, 187 (2004). Based on *Nixon*, Kaballah argues that the trial court should have subjected his

co-defendants to cross-examination outside the presence of the jury, requiring them to assert their Fifth Amendment privilege themselves, before determining whether the privilege applied. D.E. 23 at 12. However, *Nixon* did not hold that an individual must take the stand in order to assert his or her Fifth Amendment privilege or that an attorney cannot assert the privilege on behalf of a client. Rather, *Nixon* held that "certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate." *Nixon*, 543 U.S. at 187. For those decisions, "an attorney must both consult with the defendant and obtain consent to the recommended course of action." *Id.* Indeed, "the Supreme Court has never held that permitting a witness to assert his or her Fifth Amendment privilege against self-incrimination without taking the witness stand violates a defendant's right to a fair trial." *Davis v. Straub*, 430 F.3d 281, 287 (6th Cir. 2005). Kaballah has not provided any United States Supreme Court holding to the contrary. Thus, because Kaballah has failed to show that the Kentucky Supreme Court's treatment of facts and law as to this issue clearly contravened or unreasonably applied federal law, he cannot overcome the deferential standards applicable to his petition and the fourth ground of his petition should be denied.

### E.    Ground Five – Double Jeopardy

Ground five of Kaballah's petition claims the Kentucky Supreme Court erred when it denied relief as to his claim that his motion for a mistrial should have been granted after he was convicted of assault in the first degree and attempted murder for the same act. D.E. 1 at 12, D.E. 23 at 14. Kaballah raised this issue on direct appeal, and the Kentucky Supreme Court summarized the factual background of the claim:

> At the close of trial, the jury was instructed on both attempted murder and first-degree assault. Both defendants were convicted of both crimes. Defendants moved to vacate the first-degree assault conviction pursuant to KRS § 505.020 and also moved for a mistrial. The trial court instructed the jury that it could only

sentence the defendants on the attempted murder charge but denied the mistrial motion.

*Taylor*, 611 S.W.3d at 739.    The Kentucky Supreme Court held that the proper remedy was to vacate the lesser conviction, which was "effectively" accomplished by the trial court not allowing Kaballah and his co-defendant to be sentenced for first-degree assault and not listing the conviction on the final judgment.  *Id.* at 739-740.

Kaballah asserts that the Kentucky Supreme Court's holding was erroneous and that his motion for a mistrial should have been granted.  D.E. 23 at 15.  However, he fails to cite any federal law to support his claim.   On the contrary, the United States Supreme Court has held:

> If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.

*Ball v. United States*, 470 U.S. 856, 865 (1985).  Kaballah was given this precise remedy when the trial court entered judgment for only attempted murder and not first-degree assault.  He has failed to show that the Kentucky Supreme Court acted contrary to or unreasonably applied federal law as to this claim.  Thus, ground five of Kaballah's petition is without merit and should be denied.

### F.    Ground Six – Photographs of Victim Injuries

Kaballah claims in ground six of his petition that the trial court erred by failing to conduct a *Hall* analysis of the photographs taken of the victim's injuries.  D.E. 1 at 12.  Neither Kaballah's petition nor his reply further expounds upon this argument.  Thus, ground six should be denied as waived.

Even if not deemed waived, ground six fails on the merits because Kaballah has failed to show that the treatment of facts and law as to this issue clearly contravened or unreasonably applied federal law.   The Kentucky Supreme Court described the factual background of this claim:

> Prior to trial, multiple defendants objected to the photographs of Weaver's injuries being introduced at trial. The objections centered on the cumulative nature of the photographs. After reviewing the set of photographs, the trial court summarily overruled the objections and allowed introduction of all 25 photographs showing various angles of Weaver's extensive injuries. Defendants argue that the trial court did not conduct the proper *Hall* analysis when determining the admissibility of the photographs.

*Taylor*, 611 S.W.3d at 740. The Kentucky Supreme Court held that, pursuant to its own precedent, the trial court did not err by overruling those objections and admitting all twenty-five photographs of Weaver's injuries. *Id.* Again, "[g]enerally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (alteration in original) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). The Kentucky Supreme Court explained the necessity of admitting the photographs:

> Weaver suffered a litany of injuries, the compounding of which added to the Commonwealth's theory of attempted murder. The examining surgeon, Dr. Smock, testified that Weaver suffered a traumatic brain injury, tears in his rectum, tears in his lower colon, a swollen ear, several pattern injuries, swelling of the left eye, a broken tooth, bruising on both sides of his neck, chest abrasions, abrasions on his buttocks, injuries on his back, contusions on his arms and shoulders, and abrasions on his arms, fingers, knees, and lower legs. The Commonwealth had no reasonable alternative to show that an attack using almost exclusively hands and feet rose to the level of attempted murder. Thus, the trial court did not err in allowing each photograph.

*Taylor*, 611 S.W.3d at 740. Kaballah has failed to establish that admittance of the photographs rises to the level of a due process violation or otherwise cite to any federal law that the Kentucky Supreme Court's decision clearly contravened or unreasonably applied. Accordingly, ground six should be denied.

### G.    Ground Seven – *Miranda*

Next, Kaballah argues that the Kentucky Supreme Court correctly held that a *Miranda* violation had occurred, but erred in finding harmless error. D.E. 1 at 12, D.E. 23 at 16. On direct

appeal, the Kentucky Supreme Court found that Kaballah and Taylor "should have been *Mirandized* prior to interrogation due to the use of force, physical restraints, the interrogation occurring directly after a crime and a raid by the SORT team, and that neither were told they were free to leave." *Taylor*, 611 S.W.3d at 743. However, it also found that any error was harmless beyond a reasonable doubt, because "the evidence used at trial from the interviews' recordings did not carry weight as to their guilt or innocence and was not a focal point of trial." *Id.*

"'[B]efore a federal constitutional error can be held harmless' on a direct appeal from a state criminal judgment, a state appellate 'court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" *Grayson v. Horton*, No. 20-1287, 2021 WL 5094805, at *2 (6th Cir. May 3, 2021), *cert. denied*, 211 L. Ed. 2d 406, 142 S. Ct. 722 (2021) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Further, "the Supreme Court in *Brecht* held that a constitutional error in a state criminal case requires reversal on federal habeas review only if it caused 'actual prejudice.'" *Id.* at *3. (citing *Brecht v. Abrahamson*, 507 U.S. at 637 (1993)). Under this standard, relief is only appropriate if the Court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

Kaballah only argues that he should have been *Mirandized*, with which the Supreme Court of Kentucky agreed. *See* D.E. 23 at 16-17. He does not identify any actual prejudice suffered or substantial and injurious effect. Indeed, the Kentucky Supreme Court noted that the interviews "did not carry weight as to [Kaballah's] guilt or innocence and [were] not a focal point of trial." *Taylor*, 611 S.W.3d at 743. Rather, "[t]he statements introduced at trial constituted general denials and other non-incriminating information." *Id.* at 743 n.10. Kaballah has not provided any

argument or evidence to the contrary. Accordingly, the undersigned does not have any grave doubts about whether the error had a substantial and injurious effect on the jury's verdict. Thus, ground seven should be denied.

### H.     Ground Eight – Phone Call Transcript

Ground eight alleges that the trial court erred by permitting a transcript of a jail call Kaballah's co-defendant made to be shown during closing arguments. D.E. 1 at 12. However, as with some of his other claims, neither Kaballah's petition nor his reply include any further discussion or argument on this claim. Additionally, the Warden argues that this claim is unexhausted because Kaballah did not raise it on appeal, only his co-defendant did. D.E. 17 at 18-20. Indeed, the Kentucky Supreme Court noted that "[o]nly Taylor raise[d] the argument" and its review would "only analyze the potential prejudice to [Taylor's] defense and ***not to defendant Kaballah's***." *Taylor*, 611 S.W.3d at 744 (emphasis added). Kaballah fails to address his eighth ground for relief at all in his reply, let alone explain its lack of exhaustion.[3] Thus, this claim is barred by the exhaustion requirement of 28 U.S.C. § 2254(b)(1).

### I.     Ground Ten – Cumulative Error

Kaballah's final claim asserts that the cumulative error of the other claims deprived him of a fair trial. D.E. 23 at 18. He also raised this claim on direct appeal. The Kentucky Supreme Court held that "[a]s only two errors occurred, however, neither of which had a substantial influence on the verdict, no cumulative error occurred." *Taylor*, 611 S.W.3d at 745. The Sixth Circuit has repeatedly held that "cumulative error" claims are not cognizable on habeas. *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken

---

[3] Even if this claim was exhausted, the undersigned would recommend that it be denied as waived due to Kaballah's failure to provide any factual or legal support for his claim.

on this issue."); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005) ( "[W]e have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."). Accordingly, Kaballah cannot show that the Kentucky Supreme Court's holding was contrary to or unreasonably applied federal law. Thus, his tenth ground for relief should be denied.

### IV. Conclusion

For the reasons discussed above, the Court **RECOMMENDS** that Kaballah's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.E. 1) be **DENIED**.

Although Kaballah did not request one, no evidentiary hearing is warranted. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court further **RECOMMENDS** that no certificate of appealability ("COA") issue. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Under this standard, the petitioner "must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.

In this case, the opinions of the Kentucky courts are entitled to capacious deference under AEDPA. Reasonable jurists would not find that these courts rendered "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Kaballah's claims are insufficiently viable to deserve encouragement to proceed further.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this recommended disposition, issued under subsection (B) of the statute. *See also* Rule 8(b) of the Rules Governing Section 2254 Proceedings. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 12th day of January, 2023.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge